UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON

CIVIL ACTION NO. 05-13-DLB

AMY SEITER                                                                                    PLAINTIFF

vs.                          **MEMORANDUM OPINION & ORDER**

DHL WORLDWIDE EXPRESS                                                    DEFENDANT

**********************

This pregnancy discrimination case, brought by Plaintiff pursuant to 42 U.S.C. § 2000e(k), is presently before the Court upon the following motions: 1) Plaintiff's Motion to Alter or Amend the Judgment (Doc. #17),[1] and 2) Defendant's Motion for Summary Judgment (Doc. #24). The motions are fully briefed and now ripe for review.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Amy L. Seiter began working for Defendant, a worldwide delivery company, at its hub at the Greater Cincinnati/Northern Kentucky International Airport on November 17, 1997. Plaintiff was initially employed as a clerical in the International Division, but in November 1998, she transferred to "South Unload," where she was responsible for unloading packages from aircraft. In early 2001, Plaintiff transferred again to the Auditing

---

[1]Plaintiff filed this motion, which is essentially a request for reconsideration, on December 1, 2005, after the Court denied her Motion for Judgment on the Pleadings. (Doc. #16). Defendant filed a response in opposition on December 19, 2005 (Doc. #19), and the time for filing a reply has long-since expired.

1

Department, where her job was to inspect incoming containers for improper loading.[2] Plaintiff worked in that capacity for approximately three years, until she transferred back to unloading in early 2003.

Plaintiff learned that she was pregnant in February 2004. She initially saw primary care physician Dr. Miles, who restricted her to lifting no more than 40 pounds. Plaintiff immediately informed her supervisor, Angie Reece, of both her pregnancy and Dr. Miles' lifting restriction. On February 17, 2004, Plaintiff met with Defendant's Human Resources Generalist, Tami Streby, and Ms. Reece's superior, Danny Bosley, to discuss her options. During that meeting, Plaintiff was informed that although she was ineligible for light-duty work, she could apply for other available positions that would accommodate her restriction, or take unpaid FMLA leave. Two weeks later, on March 3, 2004, Plaintiff saw her obstetrician, Dr. Vincent Lubrano. According to Dr. Lubrano, Plaintiff was able to continue working, subject to a 30-pound lifting restriction.

It is undisputed that Plaintiff's regular job duties were incompatible with the restrictions imposed by Drs. Miles and Lubrano. It is also undisputed that, at all times relevant to this lawsuit, Defendant maintained a policy of providing light-duty assignments only to employees who were injured on-the-job and thus, entitled to workers' compensation benefits.

Plaintiff applied for a data entry position, but was not selected. She also received, but did not complete, FMLA paperwork. According to Plaintiff, Dr. Lubrano refused to

---

[2]In the interim, Plaintiff worked for a brief time in the Quality Control Department while she was pregnant with her first child, June. This case concerns events that transpired while Plaintiff was pregnant with her second child, Walker.

complete the required medical certification. Despite being warned by Ms. Streby in a letter dated March 19, 2004 that "[f]ailure to return the completed LOA [leave of absence] paperwork w[ould] result in an unauthorized leave of absence," and that Defendant would "be left with no other recourse but to consider your failure to comply with the established company policy as a voluntary resignation ...," Plaintiff took what she believed was authorized leave. Consistent with its prior warning, Defendant accepted Plaintiff's resignation on April 7, 2004, and officially terminated her on September 24, 2004 for taking an unauthorized leave of absence.[3]

Plaintiff filed a charge of sex-based discrimination with the Equal Employment Opportunity Commission (EEOC) on March 9, 2004. In support, she offered the following narrative:

> I have worked for DHL for six and a-half years. I became pregnant and reported the fact to my employer. My physians [sic] restricted me to lifting nothing heavier than 40 lbs. I reported this to my employer. The employer discharged me because my job requires that I lift more than 40 lbs. My employer gives light dulty [sic] work to other employees but would not give a light-duty position to me. I believe I have been discriminated against because I am pregnant.

Approximately nine months later, on December 9, 2004, the EEOC issued Plaintiff a right to sue letter. This lawsuit followed.

Defendant filed a motion for summary judgment, arguing that "the only factor that [it] considered when granting light duty was whether the employee's job restriction was job-related," and that "[t]his factor is completely gender (and pregnancy) neutral." (Doc. #24, p.5). Defendant also argues that the Sixth Circuit recently upheld a substantially similar

---

[3]Defendant continued to provide Plaintiff with health care coverage until September 30, 2004.

policy in *Reeves v. Swift Transportation Co.,* 446 F.3d 637 (6th Cir. 2006). Plaintiff, by contrast, contends that Defendant's light-duty policy is discriminatory per se because "[i]t treats pregnant women less favorably than workers who have sustained a work related injury." (Doc. #30, p.15). Alternatively, Plaintiff argues that Defendant's reason for terminating her - i.e., her failure to complete the FMLA paperwork - is "so insufficient ... it is pretextural [sic]." (Doc. #30, p.14). For the reasons that follow, the Court holds that Defendant's light-duty policy is pregnancy-blind, and does not run afoul of the Pregnancy Discrimination Act (PDA). Defendant's Motion for Summary Judgment (Doc. #24) is, therefore, **granted**.

## II. ANALYSIS

A.  **Summary Judgment Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this initial burden, the non-movant cannot rest on its pleadings, but must show that there is a genuine issue for trial. *Id.* at 324. All evidence and inferences based on evidence must be considered in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio* Corp., 475 U.S. 574, 587 (1986). However, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1427, 1479-80 (6th Cir. 1989).

**B.     Discussion**

Title VII of the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e to 2000h-6, prohibits employment-related discrimination based upon several factors, including gender. In *General Electric Co. v. Gilbert*, 429 U.S. 125 (1976), however, the Supreme Court held that discrimination on the basis of pregnancy did not violate Title VII's proscriptions. *Id.* Two years later, in 1978, Congress responded to *Gilbert* by amending Title VII to include section 2000e(k). That section, known commonly as the Pregnancy Discrimination Act ("PDA"), expressly overrode *Gilbert* by explaining that:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and *women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under firing benefit programs, as other persons not so affected but similar in their ability or inability to work*.

42 U.S.C. § 2000e(k) (1994) (emphasis added). Accordingly, the PDA transforms improper distinctions based upon pregnancy or potential pregnancy into overt sex discrimination violative of Title VII. *Grant v. General Motors Corp.*, 908 F.2d 1303, 1307 (6th Cir. 1990).

Since its passage, the Supreme Court has established a clear framework for analyzing Title VII cases, a framework that applies with equal force to cases arising under the PDA. *See Asher v. Riser Foods, Inc.*, No. 92-3357, 1993 WL 94305, at *4 (6th Cir. Mar. 30, 1993) (applying the *McDonnell Douglas* test to a Title VII suit brought pursuant to the PDA). First, the plaintiff has the burden of proving a prima facie case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions.

5

*McDonnell Douglas*, 411 U.S. at 802; *see also Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1082 (6th Cir. 1994) (holding that once the plaintiff has made a prima facie case of racial discrimination, the burden shifts to the defendant to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, non-discriminatory reason). If the defendant is able to articulate such a reason, the plaintiff then carries the burden of proving that reason to be a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 803.

To establish a prima facie case of discrimination under Title VII, Plaintiff may prove her claim either through direct evidence, statistical proof, or circumstantial evidence.[4] Proceeding under the last alternative requires Plaintiff to show: (1) she was a member of a protected class, (2) she suffered an adverse employment action or was denied benefits, (3) she was qualified for the position or the benefits, and (4) she was replaced by someone outside the protected class. *McDonnell Douglas*, 411 U.S. at 802. Plaintiff may also establish a prima facie case of discrimination by showing, in addition to the first three elements, that "a comparable non-protected person was treated better." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). The Sixth Circuit has held that in pregnancy

---

[4]As explained by the Eleventh Circuit, there are two types of discrimination actionable under Title VII, disparate treatment and disparate impact. Although proof of discriminatory intent is necessary for a plaintiff to succeed on a claim of disparate treatment, a claim of disparate impact does not require evidence of intentional discrimination. *Spivey v. Beverly Enterprises, Inc.*, 196 F.3d 1309, 1312 (11th Cir. 1999). Instead, establishing a prima facie case of disparate impact discrimination involves two steps: 1) the plaintiff must identify the specific employment practice that allegedly has a disproportionate impact, and 2) the plaintiff must demonstrate causation by offering statistical evidence sufficient to show that the challenged practice has resulted in prohibited discrimination. *Id*. at 1313. If the plaintiff establishes a prima facie case, the employer can then respond with evidence that the challenged practice is both related to the position in question and consistent with business necessity. *Id*.

discrimination cases, a "comparable" person is one who is similarly situated in her or his ability or inability to work. *Ensley-Gaines v. Runyon*, 100 F.3d 1220, 1226 (6th Cir. 1996).

As noted by Defendant, the Sixth Circuit recently decided a case that is both factually and legally indistinguishable from the instant case. In *Reeves v. Swift Transportation Co.*, 446 F.3d 637 (6th Cir. 2006), Amanda Reeves was employed by Swift Transportation as an over-the-road truck driver. After learning that she was pregnant, Reeves saw her obstetrician, who restricted her to light work and lifting no more than 20 pounds. *Id*. at 638-39. As a result of these restrictions, she was unable to perform her regular truck driving duties, which required occasional bending, twisting, climbing, squatting, crouching, and balancing; pushing/pulling freight weighing up to 200 pounds; and occasionally pushing freight weighing up to 100 pounds with brute force. *Id*. at 638. Reeves repeatedly requested light-duty assignments, but Swift insisted that it had no such work for her to do, and ultimately terminated her for that reason. *Id*. at 639.

Much like Defendant, Swift maintained a policy of providing light-duty work only to employees on workers' compensation leave, i.e., employees who had sustained on-the-job injuries. *Id*. Those employees received light-duty assignments that accommodated their injuries, as well as Swift's needs. Light-duty assignments included "basic office work such as answering phones for recruiting, entering orders, filing, handing out towels and the like." *Id*. It was undisputed that Reeves did not sustain a job-related injury, and she conceded that, to her knowledge, no employee had been given a light work assignment who was not on workers' compensation leave. *Reeves*, 446 F.3d at 639.

The district court held that Swift was entitled to summary judgment at the pretext phase of the *McDonnell Douglas* test. *Id*. The district court held that Reeves had

7

established a prima facie case for pregnancy discrimination, but ultimately granted summary judgment in favor of Swift because Reeves was unable to prove that its light-duty policy was a pretext for pregnancy discrimination. *Id*. The court reasoned that the policy itself was not pretextual because it did not take account of pregnancy, and Swift did not make exceptions for non-pregnant employees while enforcing the policy against pregnant employees. *Id*. The Sixth Circuit agreed, concluding that Reeves had failed to present any evidence - direct or circumstantial - of unlawful discrimination.

The court began by rejecting Reeves' argument that the terms of the Swift policy constituted direct evidence of discrimination, as well as a "per se violation" of the PDA. *Id*. at 640. According to Reeves, a person injured on the job with the same work abilities as her received light duty and thus, preferential treatment. *Id*. at 641. This better treatment, in Reeves' view, violated the plain language of the PDA. *Reeves*, 446 F.3d at 641. The Sixth Circuit disagreed, noting that Swift's light-duty policy, under which determinations were made solely on the basis of whether there had been a work-related injury or condition, was indisputably pregnancy-blind. *Id*. In doing so, however, the court was careful to acknowledge that "[p]regnancy-blind policies of course can be tools of discrimination." *Id*. It clarified that challenging such a policy as a tool of discrimination requires evidence and inference beyond the policy's express terms. *Id*.

The court then examined whether Reeves had produced any circumstantial evidence of discrimination, utilizing the familiar *McDonnell Douglas* burden-shifting framework. *Id*. Swift conceded that Reeves had established her prima facie case, and so the burden shifted to Swift to come forward with evidence that it terminated Reeves for reasons unrelated to her pregnancy. *Id*. According to Swift, it terminated Reeves "not on account

8

of her pregnancy, but because she could not perform the heavy lifting required of truck drivers." *Reeves*, 446 F.3d at 641. That allegation was sufficient to shift the burden back to Reeves to show that Swift's proffered reason was a pretext for discrimination. *Id*. at 642. The court concluded that Reeves failed in that regard. *Id*.

In doing so, the Sixth Circuit joined the Fifth and Eleventh Circuits, which had also rejected claims substantially similar to Reeves'. *Id*. at 642. In a case involving an identical light-duty policy, a unanimous Fifth Circuit panel held that ruling for the plaintiff would have the effect of granting a right of special treatment for pregnant employees. *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204 (5th Cir. 1998). The Eleventh Circuit reached the same conclusion in *Spivey v. Beverly Enterprises*, 196 F.3d 1309 (11th Cir. 1999). The plaintiff in *Spivey* argued that she should have been given the accommodation of modified duty because she was as capable of performing the duties required of a modified duty assignment as non-pregnant employees who were injured on the job. The Eleventh Circuit disagreed, holding that the employer was under no obligation to extend this accommodation to pregnant employees because the PDA does not require that employers give preferential treatment to pregnant employees. *Id*. at 1312-13.

Although not explicitly labeled as such, Plaintiff has alleged a claim of disparate treatment. This is reinforced by her repeated assertion that "equal or lesser disabled employees ... who were injured on the job received light duty work while pregnant women, like [her], were summarily denied light duty work." (Doc. #30, p.6). Just as in *Reeves*, Defendant acknowledges that Plaintiff "may be able" to establish a prima facie case of discrimination. (Doc. #24, p.6). Therefore, the Court assumes, without deciding, that Plaintiff has satisfied her initial burden.

Accordingly, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its conduct. *Reeves*, 446 F.3d at 641. In this case, Defendant maintains that it terminated Plaintiff for violating its leave policy. More particularly, Defendant claims that Plaintiff took a leave of absence without completing the required paperwork. It also defends its light-duty policy, stating:

> DHL has legitimate nondiscriminatory reasons for distinguishing between employees injured on the job and those who were not. Among other things, under workers' compensation, individuals who have work-related injuries are entitled to compensation, whether or not they work. Therefore, allowing those employees who are eligible for workers' compensation to perform some light-duty work has a clear economic benefit.

(Doc. #24, p.6). The Court concludes that Defendant has likewise sustained its burden.

Finally, the burden returns to Plaintiff to show discrimination by a preponderance of the evidence, or that Defendant's proffered reason is a pretext for discrimination. *Reeves*, 446 F.3d at 642. Plaintiff candidly admits "that she was ordered to have the FMLA paperwork filled out, that she was unable to get her physician to fill out the FMLA paper and subsequently unable to turn it in to the Defendant." (Doc. #30, p.13). She claims, however, that her physician refused to complete the medical certification, and she could not compel him to do so.[5] Plaintiff also alleges that Defendant "knew that [she] did not qualify for FMLA [leave] ... [and] that the task of obtaining her physician's signature was outside her ability to accomplish." (Doc. #30, p.14). According to Plaintiff, "[t]he clear implication is that Defendant set her up to fail and then used the failure to justify her dismissal." (*Id.*).

---

[5]Plaintiff stated in her deposition that her physician refused to state that she had a "serious health condition" or was "disabled" due to her pregnancy. (Plf's depo, pp. 61-70). The medical certification provided by Defendant, however, did not require such a statement.

Plaintiff's allegations are bold to say the least. Nevertheless, they are just that, allegations. In sum, Plaintiff has failed to present any competent evidence from which a jury could find that Defendant harbored discriminatory intent, or that Defendant's policy was a pretext for unlawful pregnancy discrimination. Absent such evidence, her claim must fail.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that:

(1) Defendant's Motion for Summary Judgment (Doc. #24) be, and hereby is, **GRANTED**;

(2) Plaintiff's Motion to Alter or Amend the Judgment (Doc. #17) be, and hereby is, **DENIED**; and

(3) Plaintiff's claim be, and hereby is, **dismissed with prejudice**. A judgment in favor of Defendant will be entered concurrently herewith.

This 22nd day of August, 2006.

G:\DATA\Opinions\2-05-13-MSJMOO.wpd



Signed By:
*David L. Bunning* DB
United States District Judge